UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

MBF INSPECTION SERVICES INC.,

  Debtor.                                                                  Case No. 18-11579-11

Chapter 11

**DEBTOR'S FIRST AMENDED EMERGENCY FIRST MOTION
FOR USE OF CASH COLLATERAL**

The Debtor in Possession, MBF Inspection Services Inc. (the "Debtor"), pursuant to Bankruptcy Code §§363(c) and 521(a) and Bankruptcy Rule 4001(b), files this Motion for Use of Cash Collateral (the "Motion"), served June 22, 2018, seeking authority to use cash collateral beginning on the date of entry of this Order through six (6) months (the "Cash Collateral Period"). In support of this Motion, the Debtor states:

Immediate and Irrearable Harm to the Estate without Use of Cash Collateral.

The Debtor requires the use of cash collateral to continue the operation of its business. Use of cash collateral is necessary, among other things, to pay for labor, utilities, equipment repairs, insurance, fuel, other expenses incurred in the ordinary course of the Debtor's business and

1

professional fees and expenses incurred in connection with this bankruptcy case. Without authority to use cash collateral, the Debtor will be unable to make payroll, carry on its jobs, or administer this bankruptcy case.

1.  The debtor's total assets and liabilities are as follows: total assets_$9,237,384.00. Total liabilities_$3,683,433.00 (approximate). The cash collateral assets include pledged cash, and deposits to Inspection Leasing Inc., resulting from the use of cash collateral assets shortly before the filing of the petition in the regular course of business in the amount_$1,621.813.70 (approximate) cash and deposit. Together with other assets described as follows: receivables valued at $4,276,861.00 (approximate).

2.  Inspection Leasing Inc. holds a lien on cash collateral mainly receivables. The debtor is in regular contact with them and the lenders counsel and the debtor and the lender have tactfully worked out the cash collateral agreement.

3.  On June 22, 2018, Debtor commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, Debtor has retained possession of its assets and is operating its business.

4.  No Committee. No creditors' committee has been appointed.

5.  Nature of the Debtor's Business. The Debtor's business consists of:

(a), pipeline inspection business.

(1) As of June 22, 2018, the Debtor's cash collateral assets are approximately receivables, cash and deposits. (ii). The Debtor estimates the value of the receivables, cash, and deposits to be approximately$6,414,501.70 prior to any collections.

(2) <u>Creditors Holding or Claiming Liens Against Cash Collateral, and Efforts Contact Such Creditors Regarding Use of Cash Collateral</u> – Inspection Leasing Inc. contacted affiliated creditor and their attorney, believed to be Louis Puccini (debt $2,970,385.00). Bank of the Southwest contacted President Mr. Bertram, attorney James Roggow - no funds drawn; the Valley Bank of Commerce secured by CD only contacted President, Mr. Cody Burson (debt $250,000.00 plus interest).

6. <u>Debtor's Authority to Use Cash Collateral</u>

(a) The Debtor's good faith best estimate of its monthly revenues and expenses for the Cash Collateral Period by average month is set out in the budget attached as Exhibit A. To operate its business and administer the bankruptcy case, Debtor requests authority to use cash collateral during the Cash Collateral Period in accordance with the Budget and the order resulting from this Motion.

(b) Debtor requests that the order resulting from this Motion authorize Debtor to use cash collateral, as follows:

For the actual and necessary post-petition business and administrative expenses of the Debtor as set forth in the Cash Collateral Budget, but (except as provided below) not to exceed 15% more than the amount in each line item of the Budget for that period:

(2) In addition to the amounts set forth in the Budget:

(i) To make any utility deposits and adequate protection payments ordered by the Court pursuant to Bankruptcy Code § 366;

3

(ii) For the payment of the statutorily required fees of the United States Trustee's Office accruing during the Cash Collateral Period and other allowed administrative expenses;

(iv) To pay for necessary repairs and equipment replacements, as needed, in an amount up to $5,000 per month in addition to the amounts set forth in the Budget;

(v) To pay the actual amount of utility charges, and

(vi) For such other expenses as approved in writing (e-mail approval by its counsel to be sufficient by Inspection Leasing Inc.) or as authorized by further order of the Court after notice, any Committee, and the United States Trustee.

Notwithstanding the above, the Debtor shall not pay compensation or any other payments to any "insider" or "affiliate" (as those terms are defined in the Bankruptcy Code), nor to any former stockholder, except (a) for its monthly draw, salaries, or contract payments shown on the budget I and J, (b) other payment of expenses ordinarily paid, including the Debtor paying for telephone bills, and vehicles for use by the Debtor; (c) normal payroll expenses for work performed; (d) to reimburse ordinary out-of-pocket employee expenses; and (e) to fund ordinary employee benefits included in the Budget.

If Debtor requires the use for cash collateral in addition to the amounts authorized under paragraph 6(b), the Debtor must give written notice of the same to counsel of record for Inspection Leasing Inc., being sufficient, prior to making the expenditures. If counsel consents or fails to object within three (3) business days after receipt of such notice *(i.e.,* excluding weekends and legal holidays), the Debtor may use cash collateral as proposed to pay for such excess amount. If he objects in writing

within such three (3) business day period (e-mail notice to Debtor's counsel being sufficient), the Debtor may request a hearing on the use of additional cash collateral for such purposes on short notice limited to counsel for Inspection Leasing Inc., the U.S. Trustee and any Committee; provided, however, if the Debtor believe in good faith that the expenditure needs to be made prior to the expiration of such 3-day period to prevent damage to their operations, the Debtor may request an emergency hearing before such 3-day period expires, and may make such emergency expenditures if an emergency hearing cannot be timely obtained so long as Inspection Leasing Inc.is given notice of the expenditures within five (5) business days after the expenditures are made.

(c)   If any expenses are budgeted to be incurred or paid by the Debtor in a particular month but are not incurred or are incurred but not paid in that month, the Debtor may carry over the budget amounts for such expenses into future months, so long as the aggregate amount paid does not exceed the aggregate amount set forth in the Budget for the Cash Collateral Period (and any prior cash collateral periods) or such other amounts that are authorized to be spent under any prior cash collateral orders or the order resulting from this Motion.

7.   <u>Adequate Protection for Cash Collateral Creditors.</u>

(i)   <u>In adequate protection: the proceeds of the cash collateral shall be deposited in debtor's DIP account at the Bank of the Southwest. Debtor Shall use funds, first to reduce the balance on Debtors' cash collateral line of credit to Inspection Leasing Inc. and second, to be spent and applied in accordance with the terms of the cash collateral order and budget set forth in this cash collateral motion and any order. Debtor then may withdraw upon that line of credit as</u>

established. Debtor shall pay on the line of credit in accordance with the terms set forth in the applicable promissory notes.

(i) Inspection Leasing Inc., shall continue to have a security interest,

(ii) Inspection Leasing Inc., shall have a lien (the replacement lien against collateral.

(iii) Inspection Leasing Inc., shall continue to have a security interest in all assets in which such creditor had a lien or security interest as of the Petition Date (the "Pre-Petition Collateral"), which shall be subject to the same defenses and avoidance powers (if any), as existed with respect to the Pre-Petition Collateral on the Petition Date.

(iv) Inspection Leasing Inc., shall have a lien (the "Replacement Lien") against property of the same type as the Pre-Petition Collateral acquired by the Debtor post-petition, which shall be subject to the same defenses and avoidance powers (if any), as existed with respect to the Pre-Petition Collateral on the Petition Date; except the amount of the Replacement Lien is limited to (a) the difference between (x) the value of the interest in Pre-Petition Collateral plus natural additives, accounting and replacements as of the Petition Date in which Inspection Leasing Inc, .had a perfected lien and (y) the value to the Pre-Petition Collateral plus natural additives, accounting and replacements as of the date in the amount the Replacement Lien is determined, less (b) the amount by which the principal amount of the indebtedness owing by Debtor to Inspection Leasing Inc.is reduced during the Cash Collateral Period and plus the amount by which the principal amount of the indebtedness owing by Debtor to Inspection Leasing Inc.is increased during the Cash Collateral Period.

(v) Unless the Court orders otherwise, all disbursements from the Debtor in Possession account will be disbursed by a check signed by the Debtor, or transferred by other means (such as a wire transfer) approved by the Debtor.

(b) <u>Reporting by the Debtor.</u> The Debtor shall maintain records of operating revenues and expenditures. The Debtor shall provide Inspection Leasing Inc., with the following reports:

(l) By the 15th of each month a budget variance report comparing actual revenues and expenses on the Cash Collateral Budget as of the last day of the preceding month;

(c) <u>Use of Cash Collateral.</u> The Debtor will use cash collateral only for ordinary operating expenses associated with the Debtor's business in accordance with the Cash Collateral Budget and for the additional expenses permitted by a cash collateral order.

(d) <u>Payment of Taxes.</u> The Debtor will timely pay all post-petition payroll and other taxes.

(e) <u>Inspection.</u> The Debtor shall give access to Inspection Leasing Inc., during normal business hours on short advance notice to the Debtor and Debtor's counsel to inspect the Debtor's operation and assets, so long as it does not disrupt Debtor's business operation.

(f) <u>Insurance.</u> The Debtor shall continue to maintain in effect general property and liability insurance for its business operation.

7

(g) <u>Other.</u>   Such other adequate protection as the Court may order.

8   <u>Lien Priority; No Filing or Recording Necessary.</u> The liens (including security interests) in the Post-Petition Collateral, shall be deemed valid and perfected as of the Petition Date, without further filing or recording under any state or federal law, to the same extent as such liens and interests in the Pre-Petition Collateral of the same type was valid and perfected as of the Petition Date (and shall be subject to the same defenses and avoidance powers as existed on the Petition Date with respect to the Pre-Petition Collateral).  Liens and interests in the Post-Petition Collateral shall have the same validity and priority as such creditor's liens and/or interests in the Pre-Petition Collateral of the same type (subject to the same defenses and avoidance powers). Debtor/Creditor shall not be required to file financing statements or other documents in any jurisdiction or take any other action (including without limitation obtaining possession of any collateral) to perfect their liens and interests granted under or pursuant to the order resulting from this motion to the extent such liens and interests in the Pre-Petition Collateral of the same type was valid and perfected as of the Petition Date. The validity of such perfection shall not be affected by any (a) conversion of this case to chapter 7; (b) appointment of a trustee under chapter 7 or chapter 11; or (c) dismissal of this bankruptcy case.

9.   <u>Events of Default.</u> Each of the following events would constitute an "Event of Default":

(a)   An Event of Default shall occur if the Debtor fails to comply in a material respect with any of the requirements of the order resulting from this motion, except (i) if such failure is of a type that is curable Debtor shall have five business day

8

after receipt of the written notice to cure the failure to comply before an Event of Default shall be deemed to occur, and (ii) the Court may excuse the noncompliance based on the equities after notice and opportunity for a hearing in which event an Event of Default will be deemed to have not occurred;

      (b)  An Event of Default shall occur upon written notice by counsel for the Debtor, if the bankruptcy case is converted to a case under chapter 7 of the Bankruptcy Code without the consent of the Inspection Leasing Inc. Inspection Leasing Inc., may waive the existence of any Event of Default specified in subsection (a).

  10.  <u>Termination of Authority to Use Cash Collateral.</u> (i) Five (5) business days after the occurrence of an Event of Default that is not waived or excused as provided above, (ii) upon expiration of the Cash Collateral Period, or (iii) if a Chapter 11 trustee or an examiner with substantially all of the powers of a trustee, but including in any event the power to operate the Debtor's business, is appointed, in either case without the consent of Inspection Leasing Inc., the authority to use cash collateral granted by the resulting Order from this motion automatically would terminate (except for payment to post-petition trade vendors for goods or services, such as grain, hay, repairs, parts, etc., ordered or provided during the Cash Collateral Period and to make accrued payroll), without prejudice to the rights of the Debtor to ask for and Inspection Leasing Inc.to oppose further use of cash collateral, and except as provided above the Debtor thereafter shall not make further use of cash collateral without first obtaining a further order of the Bankruptcy Court or the prior written consent of Inspection Leasing Inc..

11. <u>Survival.</u> The liens granted in favor of Inspection Leasing Inc., would survive the entry of any order (a) dismissing this bankruptcy case, (b) converting the chapter 11 case to any other chapter under the Bankruptcy Code, (c) withdrawing reference of the case from this Bankruptcy Court, (d) appointing a trustee or an examiner with expanded powers to serve in the Bankruptcy Case, or (e) suspending the proceedings in or otherwise abstaining from the handling of this bankruptcy case.

12. <u>Non-Waiver of Rights.</u> The order resulting from this motion would not constitute: (a) a preclusion against or waiver by Inspection Leasing Inc.to seek other and further relief in this case, including but not limited to filing a motion to dismiss, filing a motion to appoint a trustee, filing a motion to modify the order resulting from this motion or to prohibit the further use of cash collateral or the commencement of any adversary proceeding; (b) a waiver of any other rights, remedies or defenses available to Inspection Leasing Inc., or a waiver of the right to respond to or defend any motion, application, proposal or other action; or (c) a waiver of any rights, remedies or defenses that Inspection Leasing Inc., may have. Debtor does not waive any rights, remedies, defenses or avoidance powers available to Debtor with respect to Inspection Leasing Inc., claims or collateral.

13. <u>Modification of the Order.</u> The order resulting from this motion could not be modified in any way without an order of the Court after notice and a hearing (as defined in Bankruptcy Code § 102. Any modification of the order resulting from this motion would not limit or reduce the continuing and replacement liens granted under such order with respect to any cash collateral used prior to the modification of such order.

10

14. <u>Recitation of Liens and Amounts of Indebtedness.</u> The recitation of liens and amounts of indebtedness set forth in this motion are the Debtor is his good faith estimates at this time. The Debtor reserves the right to revise these estimates.

**WHEREFORE** the Debtor requests the following relief:

A. Authority to use cash collateral during the Cash Collateral Period, as requested in this Motion;

B. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

B.L.F., LLC

s/ Electronically filed_____
Jennie Deden Behles
P.O. Box 7070
Albuquerque, NM 87194-7070
(505) 242-7004, (505) 242-7066 Fax
jennie@jdbehles.com

## CERTIFICATE OF SERVICE

      I served a true copy of the foregoing on June 22nd, 2018 by filing the original with the Court Clerk which caused an electronic copy hereof to be served on said counsel, and, if such electronic service was not noted on the Notice of Electronic Filing which was generated at the time filing, then by first class mail, postage prepaid, or by fax, if a fax number is shown, or by such other means as I specified.

Leonard Martinez-Metzgar
United States Trustee
P.O. Box 608
Albuquerque, NM 87103
Email: leonard.martinez-metzgar@usdoj.gov

James A, Roggow
Roggow Law LLC
205 W Boutz Rd Bldg 2 Ste C
Las Cruces, NM 88005-3259
Email: jaroggow@qwestoffice.net

Louis Puccini Jr.
Robert D. Gorman P.A.
P.O. Box 25164
Albuquerque, NM 87125-0164
Email: louis@rdgormanlaw.com

Robert Cody Burson
Valley Bank of Commerce
President
P.O. Box 2015
Roswell, NM, 88202
Telephone: (575) 623-2265
Fax: (575) 622-9943

By: *s/ filed electronically*
Jennie Deden Behles

# MBF Inspection Services, Inc.
## Budgeted/Projected Monthly Revenues, Costs, and Expenses
### For the Twelve Months Ended December 31, 2018
**As of:** June 12, 2018

| | Budgeted June | Budgeted July | Budgeted August | Budgeted September | Budgeted October | Budgeted November | Budgeted December |
|---|---|---|---|---|---|---|---|
| **Revenue from operations** | | | | | | | |
| Sales | 4,800,000 | 4,900,000 | 5,000,000 | 5,000,000 | 5,000,000 | 4,900,000 | 4,800,000 |
| Sales returns & allowances | (51,500) | (51,500) | (53,000) | (53,000) | (53,000) | (51,500) | (51,500) |
| Other operating income | - | - | - | - | - | - | - |
| **Total revenue from operations** | 4,748,500 | 4,848,500 | 4,947,000 | 4,947,000 | 4,947,000 | 4,848,500 | 4,748,500 |
| **Cost of sales** | | | | | | | |
| Per diem | 1,100,000 | 1,125,000 | 1,150,000 | 1,150,000 | 1,150,000 | 1,125,000 | 1,100,000 |
| Mileage | 285,000 | 291,000 | 297,000 | 297,000 | 297,000 | 291,000 | 285,000 |
| Field labor | 2,592,000 | 2,646,000 | 2,700,000 | 2,700,000 | 2,700,000 | 2,646,000 | 2,592,000 |
| Payroll taxes | 220,000 | 225,000 | 230,000 | 230,000 | 230,000 | 225,000 | 220,000 |
| Employee benefits | 93,500 | 95,500 | 97,500 | 97,500 | 97,500 | 95,500 | 93,500 |
| Insurance | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 |
| Reimbursable expenses | 105,000 | 107,000 | 109,000 | 109,000 | 109,000 | 107,000 | 105,000 |
| Non-billable reimbursed expenses | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Contract labor | - | - | - | - | - | - | - |
| Drug testing, safety, & training costs | 25,000 | 26,000 | 26,500 | 26,500 | 26,500 | 26,000 | 25,000 |
| **Total cost of sales** | 4,487,750 | 4,582,750 | 4,677,250 | 4,677,250 | 4,677,250 | 4,582,750 | 4,487,750 |
| **Gross profit** | 260,750 | 265,750 | 269,750 | 269,750 | 269,750 | 265,750 | 260,750 |
| **Other operating costs and expenses** | | | | | | | |
| Advertising | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Bad debt expense | - | - | - | - | - | - | - |
| Bank charges | - | - | - | - | - | - | - |
| Car & truck expense | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Depreciation & amortization | 72 | 72 | 72 | 72 | 72 | 72 | 72 |
| Donations | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Dues & subscriptions | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Employee benefits | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Insurance | - | - | - | - | - | - | - |
| Interest | 11,500 | 11,550 | 11,550 | 11,550 | 11,550 | 11,550 | 11,550 |
| Legal and professional fees | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Meals and entertainment | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Office expense | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Penalties | - | - | - | - | - | - | - |
| Rent | 20,964 | 20,964 | 20,964 | 20,964 | 20,964 | 20,964 | 20,964 |
| Repairs & maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Salaries & wages | 110,000 | 110,000 | 112,500 | 110,000 | 110,000 | 110,000 | 110,000 |
| Supplies | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Taxes | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 |
| Telephone | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Travel | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| **Total operating costs and expenses** | 192,186 | 192,236 | 194,736 | 192,236 | 192,236 | 192,236 | 192,236 |
| **Income/(loss) from operations** | 68,564 | 73,514 | 75,014 | 77,514 | 77,514 | 73,514 | 68,514 |
| **Other income and (expenses)** | | | | | | | |
| Gains/(losses) from disposals of assets | - | - | - | - | - | - | - |
| Interest income | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Dividend income | - | - | - | - | - | - | - |
| Miscellaneous income | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Rental Income | 300 | 300 | - | - | - | - | - |
| Other expenses | - | - | - | - | - | - | - |
| **Total other income and (expenses)** | 425 | 425 | 125 | 125 | 125 | 125 | 125 |
| **Net income/(loss) before income taxes** | 68,989 | 73,939 | 75,139 | 77,639 | 77,639 | 73,639 | 68,639 |

A