UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In Re:
    MBF Inspection Services, Inc.

    Debtor.
               No. 18-11579-11
                Chapter 11

## MOTION TO DETERMINE IN AND OUT HANDLING OF POST-PETITION CASH COLLATERAL LOAN CONSTITUTES A DISTRIBUTION SUBJECT TO U.S. TRUSTEE'S FEES IN THIS CASE

    COMES NOW the Debtor and as and for its Motion to Determine In and Out Handling of Post-Petition Cash Collateral Loan constitutes A Distribution Subject to U.S. Trustee's Fees in this Case does state:

    1.    The Debtor has received notice from the office of the U.S. Trustee that certain payments made by it constitute a distribution and that of U.S. Trustee's fees are not made on those payments the office of the U.S. trustee will file to dismiss this Chapter 11 because they consider those payments to be a distribution.

    2.    The funds in question constitute a payment on the in and out cash collateral line of credit approved by this court post-petition. See Dkt. No. 68. That line of credit works as follows:

    3.    The U.S. Trustee's fee has been increased for a certain period of time due to the fact that the fund balance was running low as either fewer people file Chapter 11's or the amount of their distributions were not as great and so as a result the percentage amount of the distribution was increased temporarily and that has been further extended to terminate the fall of 2018 (unless further extended).

1

4. In the case of this debtor it has been paying substantial U.S. Trustee's fees and since the beginning of this case, its operating report shows that those Trustee's fees since the filing from June 22 through November 20 are very large. The Debtor has to use its in and that post-petition cash collateral line of credit when its business is slower and it must borrow to meet payroll and insurance obligations and then generally to avoid heavy interest accruals, it pays that line down until it once again needs to meet payroll, insurance, or tax payments when its receivables haven't been fully collected, and it repeats this process often on a monthly basis. particularly during certain times of the year. As an example, for the quarter ending in September 2018, it dealt with the interim cash collateral, post-petition cash collateral line. Bear in mind the Trustee's fees are already paid once over. Salary, insurance payments, and taxes are paid out with the funds borrowed. Then an additional sum is required. U.S. Trustee's fees must be paid if the funds are temporarily returned and redrawn.

5. So what occurs here in this line of credit post-petition cash collateral borrowing, is that the U.S. Trustee is taxing those twice with the U.S. Trustee's fee because it wants to treat not only the use of the borrowed funds to pay payroll, insurance and taxes as a "distribution," but it wants to treat the interim retirement on the in and out line of credit as a distribution thereby any fee is charged not once, but twice on the very same money at any time that the Debtor is using borrowed funds on its draw line.

6. The Debtor's finances, rather than being maintained or improved by virtue of the loan, are actually being worsened because the Debtor pays an additional tax or fee to the U.S. Trustee for going in and trying to make its business survive.

7. The question is whether or not using an in and out line of credit as it is intended to be used and in writ, constitutes a "distribution" for purposes of U.S. Trustee's fees.

2

8. 28 USC section 1930(a)(6) sets a graduated scale whereby quarterly fees are paid to the U.S. Trustee based on the total amount of disbursements, and it says, "In addition to the filing fee paid to the clerk, the quarterly fee shall be paid to the United States Trustee, or deposited in the Treasury." In each case, under Chapter 11 of Title 11 for each quarter, including any fraction thereof, until the case is converted or dismissed, whichever occurs first, the fee shall be $250 for each quarter in which disbursements total less than $15,500 for each quarter in which disbursements total $15,000 or more, but less than $150,000 and skips the fee, shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

8. Whether the quarterly fees are due under this section, depends on the definition of disbursements, however the section does not define them, nor does legislative history really discuss the meaning of the term. See *In Re Jemco*, 240 F.3d 1312, 1314, 11th Circuit (2001); *In Re Ozark Beverage Company Inc,.* 105 B.R. 510, 512 Bankr. Ed. Mo. (1989).

9. Some courts have therefore looked at this in terms of the plain dictionary meaning of the term "disbursements" and tried to determine whether or not the thing in question fits, and others have looked at such things as to whether or not the funds paid constituted property of the estate etc. Some courts look at that as establishing a use definition. In a case where a pre-petition loan was paid off in a refinance transaction when a post-petition lender acquired the pre-petition loan secured by the Debtor's real property, the Bankruptcy Court had held there was no disbursement and the Court denied the U.S. Trustee's Motion to Compel Payment of Quarterly Fees on this on the theory that there was no showing that the Debtor had any interest in, or control over the funds used by the new lender to acquire the pre-petition loan, and so this was not considered a disbursement. The Court in so doing, denied the Trustee's argument that she could

equate disbursement with benefit to the Debtor as the U.S. Trustee was arguing that any type of transaction in which the Debtor benefited would be treated as a disbursement and said, "there is no basis to equate the term disbursement with benefit."

10. Some case hold to cover every form of third-party transaction simply benefits the Debtor and the reorganization process. This restructuring agreement was authorized under a Court order on a Motion to Borrow and Provide Security, i.e. a Borrowing Order. The Court said here however, that this Debtor when they actually made payments on the loan to this lender, would be able to collect a fee, but that they were only able to hit this transaction for fee <u>one way, not both ways</u>. (Citing footnote 7 on page 125). *In Re Hale,* 436 BR 125 (2010).

11. The thing that is really disturbing about the facts in our case is that the Trustee gets fees when the loan payments are dispersed to pay the salary, insurance payments, and taxes. Then they want to collect them again when the Debtor pays down the draw to avoid paying interest. Then they get it again when, they redraw the payout next to paying payroll, and insurance, then they get it again when they pay back, and then in the end when the loan is finally paid off when it comes due.

12. As stated under the terms of the loan and collateral documents, Debtor will get payments again. It is very possible that they could pay a fee on the same money twice each and every month during the life of this loan, so that the expense of the loan would far exceed anything that the Debtor creditors thought it would be at the date when they took out this operating line. In other words, if this is going to be the case on our operating line, this is a real factor and should be considered by the Court, the lender, and the Debtor when determining if the Debtor should take out an operating line, and if the Debtor can afford to stay in business.

13. In one calendar quarter, and in the second quarter the difference in U.S. Trustee's fees would amount to $18,249.77 in one month, the interest on the loan payment if not repaid would be approximately $6,579.50.

14. These in and out payments are not final disbursements or final payments. They do not replace one loan with another, there is simply an interim measure to keep interest low during the life of the loan. It might be fair to say that if the U.S. Trustee's fees are being paid at the time the loan is repaid in full, and the line is closed in May of 2019, and an actual disbursement is made rather than a temporary in and out draw and return, those fees might be due as it is a permanent payment. This is simply a way to maintain the line in good standing and to defray the running of interest and keep the Debtor from incurring excess costs.

15. This was never a cost calculated at the time this loan is presented to the Court and the U.S. Trustee was a party to the proceeding and this was never considered as a budget item as shown on Exhibit A to the loan motion. See Dkt. 31. The U.S. Trustee participated in that proceeding and certainly did not make this claim or disclose this hidden expense at that time.

**WHEREFORE** the Debtor moves this Court for an order determining that the interim in and out draws on the line of credit do not constitute a disbursement and for such other and further relief as the Court be deemed just in the premises.

Respectfully submitted,

B.L.F., LLC

By: s/ Jennie D. Behles
Jennie Deden Behles
P.O. Box 7070
Albuquerque, NM  87194-7070
(505) 242-7004, (505) 242-7066 fax

5

# CERTIFICATE OF SERVICE

I certify that I sent a true and correct copy of the foregoing to the parties listed below on December 4th, 2018 through the Court's electronic noticing system, the CM/ECF SYSTEM.

Leonard Martinez-Metzgar
United States Trustee
P.O. Box 608
Albuquerque, NM 87103
Email: leonard.martinez-metzgarusdoj.gov

Daniel Harris Reiss
Levene Neale. et al LLP
10250 Constellation Blvd #1700
Los Angeles, CA 90067
Phone Number: (310) 229-1234
Fax Number: (310) 229-1244
Email: dhr@lnbyb.com

Matthew C. Helland
NICHOLS KASTER, PLLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: 415-277-7235
Facsimile: 415-277-7238
Email: helland@nka.com

Louis Puccini Jr.
Robert D. Gorman P.A.
P.O. Box 25164
Albuquerque, NM 87125-0164
Email:  louis@rdgormanlaw.com


By:     *s/ filed electronically*
        Jennie Deden Behles