UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MBF Inspection Services, Inc.,     Case No. 18-11579-t11

    Debtor.

## MEMORANDUM OPINION

Before the Court is a motion for relief from automatic stay, filed so the moving creditors can complete pending federal court litigation. The Court tried the contested matter on November 29-30, 2018, and is now ready to rule. For the reasons set forth below, the Court will grant the motion unless the Debtor agrees to certain conditions. On the other hand, if the debtor timely files a notice that it agrees to the conditions, the Court will deny the motion.

### I.    FACTS

The Court finds the following facts:

MBF Inspection Services, Inc. ("Debtor"), a New Mexico corporation headquartered in Roswell, New Mexico, is in the business of inspecting oil and gas pipelines. It employs certified pipeline inspectors throughout the United States and does business in 43 states.

The Debtor pays its inspectors by the day, at an agreed-upon rate.[1] Paying inspectors at a daily rate is the industry standard. When a customer solicits bids for an inspection project, it expects to receive bids from Debtor and its competitors based on paying pipeline inspectors by the day.

---

[1] The Debtor has used this compensation system for its inspectors since it began operations in November 1992.

Under the daily rate compensation system, inspectors do not get overtime pay if they work more than eight hours a day or 40 hours a week.[2] Nevertheless, certified pipeline inspectors are well paid. Currently, a busy inspector can make up to $15,000 a month.[3]

Debtor has agreements with its inspectors about the terms of employment, including the applicable day rate, a per diem for living expenses, and mileage reimbursement. Debtor classifies its inspectors as salaried employees, which means that Debtor is not required to pay them for overtime work.

Thomas Ganci is a pipeline inspector and a former employee of the Debtor. He worked in Ohio and was paid by the day like Debtor's other inspectors. He sued the Debtor in October 2015, claiming that the Debtor's policy of not paying overtime violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Ohio labor laws. In essence, Ganci argues that he was an hourly employee, not a salaried employee, and therefore was entitled to overtime.

Ganci brought his action in the United States District Court for the Southern District of Ohio. The action was certified as a class action, with about 52 plaintiffs asserting FLSA claims and another 68 plaintiffs asserting state law claims (together, the "Ganci Creditors"). The most important legal issue is whether the Ganci Creditors were hourly employees or salaried employees.

While the Ganci litigation was pending, the United States District Court for the Southern District of Ohio decided *Hughes v. Gulf Interstate Field Services, Inc.*, 2016 WL 4197596 (S.D. Ohio). The decision was favorable to Debtor, ruling that pipeline inspectors could be considered

---

[2] By the same token, inspectors get paid their full daily rate even if circumstances (e.g. weather) mean that they work less than 8 hours a day.
[3] In comparison, a worker earning $15 per hour and working full time makes about $2,580 a month.

salaried employees under the FLSA even if their employment agreements were for daily pay, so long as they actually received the specified minimum weekly amount.[4]

The *Hughes* plaintiffs appealed the district court decision. On December 19, 2017, the Sixth Circuit reversed the district court. *Hughes v. Gulf Interstate Field Services*, 878 F.3d 183 (6th Cir. 2017). The Sixth Circuit ruled that pipeline inspectors cannot be considered salaried employees unless they were guaranteed the requisite minimum weekly salary. The ruling was a major victory for the Ganci Creditors.

In April 2018, the parties filed cross motions for partial summary judgment. In its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Debtor included the following footnote (Exhibit 1, Footnote 1):

> MBF is thus not opposing those portions of Plaintiff's Motion which seek summary judgment on MBF's 1) FLSA exemption defense for all Ohio Plaintiffs and all FLSA Plaintiffs without at least one contract with MBF containing a guaranteed-pay provision; 2) 29 U.S.C. § 259 good faith defense; and 3) fifth (estoppel), sixth (failure to mitigate), seventh (latches), tenth (unclean hands) and eleventh (waiver) affirmative defenses.

(the "Concession Footnote"). The Ohio district court has not ruled on the summary judgment motions.

On June 22, 2018, the Debtor filed this bankruptcy case. In its schedules, Debtor disclosed assets of about $8.5 million and liabilities of about $3.9 million.[5] Accounts receivable and work in progress account for about $6.3 million of the assets; the rest is cash or certificates of deposit. The Debtor has very few tangible assets. The cash assets appear to be fully encumbered.

---

[4] $455 per week. *Id.* at *3, citing 29 C.F.R. § 541.602(a).
[5] The liability figure includes about $3 million owed to an affiliated secured creditor and about $500,000 owed to non-affiliated secured creditors;

Debtor's stockholders testified that if the Debtor ceased operating, it would be difficult to collect the accounts receivable and work in progress because the customers would offset the amounts due with breach of contract damage claims.

The Debtor has two stockholders; Frank Sturges, age 71 (President), and Mark Daniels, age 61 (Vice President of Operations). Each owns 50% of the corporation. A third officer, Bobby Carroll, is the controller, but does not own stock. He is 65. Each officer testified that he would like to retire in the not-too-distant future. They testified that they would like to resolve the Ganci litigation and any other daily pay disputes on reasonable terms. The implication, however, is that if the liability is too great, they may prefer to walk away and let the Debtor cease operations.[6]

In 2017, Debtor made approximately $1.4 million in profit. In 2018, the projected income is lower, and could be less than $770,000.

Senior District Court Judge George C. Smith presides over the Ganci litigation. The evidence in the record indicates that, at this point in his career, Judge Smith does not usually try cases. Debtor's counsel testified that, because the litigation would not be disposed of by summary judgment, Judge Smith might reassign the case to another judge if the stay were lifted. The new judge would then rule on the summary judgment motions and preside over the damages trial and any remaining issues. The Debtor also presented evidence that the civil caseload for judges in the Southern District of Ohio is much higher than for judges in the District of New Mexico. Finally,

---

[6] Mr. Daniels is battling cancer. He testified that he probably was willing to continue operating the Debtor as long as his health permits it. On the other hand, Mr. Daniels testified quite clearly that he believes the Debtor pays its inspectors very well and treats them more than fairly. Mr. Daniels does not believe that the Ganci Creditors are entitled to overtime pay. He appears to be the officer and stockholder least likely to continue working if the Ganci Creditors receive very large damages awards.

the Debtor presented evidence that it could easily take a year or two to complete the Ganci litigation in Ohio if the stay were lifted, and might even take longer.

During 2017, Debtor spent about $500,000 in legal and professional fees on the Ganci litigation. Debtor expects to pay a similar amount in 2018. Altogether, the Debtor has spent about $950,000 on labor litigation related to the overtime issue.

On August 27, 2018 the Ganci Creditors filed a motion for relief from the automatic stay, so they could return to Ohio and complete the litigation. The Court now decides the motion.

## II. DISCUSSION

A    Modifying the Automatic Stay "For Cause."

The Ganci Creditors ask that the Court lift the automatic stay "for cause" under 11 U.SC. § 362(d)(1). The automatic stay generally stays "litigation, enforcement of liens, and other actions, be they judicial or otherwise, which would affect or interfere with property of the estate, of the debtor, or which is in the custody of the estate." *In re Jim's Maint. & Sons Inc.*, 418 F. App'x 726, 728 (10th Cir. 2011) (quoting *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987)).

The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984), quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2nd Cir. 1976).

Bankruptcy courts may modify the automatic stay for "cause." § 362(d)(1). The Tenth Circuit has stated that because "there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Chizzali v. Gindi*

*(In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011), quoting *Pursifull*, 814 F.2d at 1504. Such a finding is considered a finding of fact, reversible only if "clear error" was committed. *In re JE Livestock, Inc.*, 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

B.	The *Curtis* Factors.

Motions for relief from the automatic stay are often filed so litigation pending in another forum can proceed to judgment. In such situations, the Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Gindi*, 642 F.3d at 872. Courts often turn to 12 non-exclusive factors identified in *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), to assist in the analysis. *See, e.g., In re Busch*, 294 B.R. 137, 141 (10th Cir. BAP 2003) ("Twelve factors were identified in [*Curtis*] as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum."). The "*Curtis* factors" are:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial;
12. The impact of the stay on the parties and the 'balance of hurt.'

40 B.R. at 799-800.

C. The *Crespin* Factors.

The Court recently issued its opinion in *In re Crespin*, 581 B.R. 904 (Bankr. D.N.M. 2018), in which it identified certain of the *Curtis* factors, and certain other factors, that are the most relevant when determining whether to modify the automatic stay to allow a party to proceed with pending litigation in another court:

1. Whether the nonbankruptcy court is a specialized tribunal;
2. Whether granting stay relief would hinder or delay estate administration;
3. Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims;
4. Whether lifting the stay would promote judicial economy;
5. Whether it would be less expensive for the parties to litigate in bankruptcy court;
6. Whether lifting the stay would prejudice other creditors;
7. The movant's likelihood of prevailing in the litigation; and
8. Whether the "balance of the hurt" weighs in favor of or against stay relief.

D. Weighing the Factors.

The Court weighs the *Crespin* factors, and then the other *Curtis* factors, as follows:

| Factor | Discussion |
|---|---|
| 1. Specialized Tribunal | Weighs against lifting the stay. United States district courts are not specialized tribunals. Indeed, they hear a wide variety of civil and criminal matters arising under state and federal law. There is nothing about the Ganci litigation that requires a specialized tribunal or a trial before a United States district court. |
| 2. Delay in Estate Administration | Weighs against lifting the stay. This case would be resolved more quickly if the Court keeps the stay in place and determines the Ganci claims through the claims allowance process. It appears that completing the litigation in Ohio could take about two years. |
| 3. Whether the facts warrant deviating from the Court claim allowance function | Weighs against lifting the stay. The Court has set a February 2, 2019, bar date in this case. The Court can schedule a final hearing on any Ganci claim objections as soon as the parties are ready to proceed. Given how busy the civil docket is in the Southern District of Ohio, the Court is loathe to shirk its core function of claims allowance, thereby burdening the district court with the matter. |
| 4. Judicial Economy | Weighs against lifting the stay. The Ganci litigation has been very expensive. The Court finds that completing the litigation through the claims allowance process would be substantially cheaper than |

|  | in the Ohio District court. The work done in Ohio is directly transferable to this Court, so there need be no duplication of effort. Further, Judge Smith is on senior status, and would not try the case if the stay were lifted. It would be no more difficult for this Court to pick up the case than for a newly assigned district court judge in Ohio. If would be better from a judicial economy standpoint to keep the matter. |
|---|---|
| 5. Litigation Expense | Weighs against lifting the stay. Allowing the litigation to proceed in district court would continue the great expense that has been incurred to date. Allowing the litigation to proceed in this Court should save substantial time and money. |
| 6. Prejudice to other creditors | Weighs against lifting the stay. Creditors would benefit by the litigation proceeding in the bankruptcy court because it likely would hasten the conclusion of this bankruptcy case, reduce administrative expense, and increase the net dividend to creditors. Further, there is some risk that the owners of the Debtor could decide that operating the Debtor is more trouble than it is worth. If the case converted to chapter 7 or the Debtor ceased business operations, creditors could be at substantial risk of nonpayment. |
| 7. Likelihood of Success | Favors lifting the stay. The Ganci Creditors have a high likelihood of success in the pending federal court litigation. |
| 8. Balance of the Hurt | If the Debtor were able to shift the litigation to this Court and change the applicable law from Sixth Circuit law to Tenth Circuit law, the Ganci Creditors likely would be hurt. That would weigh in favor of lifting the stay. On the other hand, if Sixth Circuit law continues to apply to the Ganci Creditors' claims, then denying stay relief would not hurt them, and the balance of the hurt favors the Debtor. |

Other factors:

| 9. Whether the relief would result in a partial or complete resolution of the issues. | Weighs in favor of lifting the stay. A ruling by the Ohio district court would liquidate the Ganci Creditors' claims. |
|---|---|
| 10. The lack of any connection with or interference with the bankruptcy case. | Weighs against lifting the stay. The Ganci Creditors' claims are a key part of this case. |
| 11. Whether the foreign proceeding involves the debtor as a fiduciary. | N/A |
| 12. Whether the debtor's insurance carrier has assumed full financial | N/A. The claims are not insured. |

| | |
|---|---|
| responsibility for defending the litigation. | |
| 13. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. | N/A |
| 14. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). | N/A |
| 15. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). | N/A |
| 16. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. | Weighs against lifting the stay. The parties filed cross motions for partial summary judgment, which were pending when the bankruptcy case was filed. If the Ganci Creditors prevail on summary judgment based on the *Hughes* case, they would then have to prepare for a trial on damages. Debtor's counsel testified that additional discovery on damages would have to be conducted. |

With the caveat discussed below, the *Crespin* and *Curtis* factors favor denying the motion for stay relief. It would be in everyone's best interests for the Ganci Creditors' claims to be liquidated as quickly and efficiently as practicable. That can best be done through the claims allowance process in this case. The Court can see no reason why Debtor could not confirm a plan of reorganization and complete the claims allowance process by mid-2019, especially given Debtor's statement that it intends to pay creditors in full.

The caveat is that the same law should apply to the Ganci Creditors' claims in this Court as in Ohio. Otherwise, shifting the forum from Ohio to this Court could be an unfair litigation tactic. The Court therefore will deny the stay relief motion if the Debtor agrees to the following conditions:

1. Debtor waives its right to a jury trial;
2. In the claims allowance process, the Footnote One Concessions continue to bind the Debtor, both before this Court and on appeal;
3. Debtor agrees, both before this Court and in any appeal, that Sixth Circuit law (including without limitation the *Hughes* decision) applies to the Ganci Creditors' claims; and
4. Once the Ganci Creditors file proofs of claim, Debtor will promptly assert any claim objections, which will be subject to the concessions and applicable law agreement outlined above.

On the other hand, if the Debtor is not willing to agree to these conditions, then the Court believes that the proper course would be to lift the automatic stay so the Ganci litigation could proceed to judgment.

### III. CONCLUSION

If the Debtor agrees to the above conditions, the Court will deny the motion for relief from stay. Otherwise, the motion will be granted. The Debtor should file a statement on the docket within 10 calendar days from today, indicating its decision in the matter. Shortly after the statement is filed, the Court will enter an order on the Ganci Creditors' stay relief motion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 12, 2018

Copies to: counsel of record