UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In Re:

    **MBF Inspection Services, Inc.**

    Debtor.

No. 18-11579-11
Chapter 11

## RESPONSE TO THE LIMITED OPPOSITION OF UCC TO EXTENSION

**COMES NOW** the Debtor by and through counsel through its counsel Jennie D. Behles of B.L.F. LLC and as an for its Response to the Limited Opposition to UCC Extension Motion in Regard to Plan Filing and does state:

1. The Exclusivity Extension Motion was filed on October 22, 2018 as Dkt. No. 97; the Limited Objection is filed on or about November 5, as Dkt. No. 114. The Notice of Deadline to Object was filed on 10/22/18 Dkt. No. 98 and expired on or about November 13, 2018.

2. Near as the Debtor has been able to ascertain, no other objections, limited or otherwise, have been filed.

3. It was not until 11/30/18 that Reiss, the objecting attorney, was constituted attorney for the Unsecured Creditors Committee, see Dkt. No. 140, and in fact on that same date this Court entered an Order, Dkt. No. 129 denying in part and granting in part, the Debtor's Motion to Remove Certain Members from the UCC effectively speaking, reconstitute the committee.

4. So far as the Debtor can ascertain, through the date of the depositions of the Unsecured Creditors Committee members, which were November 12th and 13th, 2018, the Unsecured Creditors Committee members had taken no action, one way or another, as to whether

1

they wished to object or not object to any extension of exclusivity on the part of this Debtor to file a plan ,see depositions of the three members of the Unsecured Creditors Committee submitted in evidence at the recent *Ganci* stay hearing. Only two meetings of the committee had been held: at one they selected Daniel Reiss's firm on the recommendation of the *Ganci* counsel to look into the Debtor's finances and at the other, they listened to a person from the U.S. Trustee's office read their duties to them.

5. Debtor's counsel, on behalf of Debtor, can hardly contact members of this committee. First, the notice appointing them scheduled them all in care of the *Ganci* federal court lawyer who is the adversary of MBF in the United States District Court proceeding with the stay motion pending, so it would violate the code of professional responsibility for Debtor's counsel to speak with these people and conversations with their counsel got no further than to say they wanted the stay lifted to litigate the *Hughes* case ruling in Ohio, and nothing further would be discussed until that matter had been resolved.

6. Furthermore, making any attempts to force that matter could be considered retaliation under the FLSA and it would not be wise for the Debtor directly or through counsel to violate the FLSA in that regard and engage in any behavior which might be seen as retaliatory, such as trying to extend the time in which their claim gets paid. At any rate, these committee members arranged it so that they could be contacted in no other way than through their United States District Court counsel. Hence, neither counsel for the Debtor are in a very good position with the members of this committee who had only tentative counsel.

7. Indeed the Debtor has done everything it can here at every turn to try to resolve issues and get a plan filed in this case and it even did so in the face of the *Ganci* creditors who took immediate and total control of the Unsecured Creditors Committee and have tried to stop

everything in this case so that they could return to the state's District Court for the Southern District of Ohio and litigate the amount of their claim and initially collect that claim.

8. They appeared to change their position they were taking once this court made certain statements on the record about how seldom it would allow such a thing during the hearing on objections to the composition of the committee, and to the employment of its counsel so that the stay motion proceeded only on a modification having to do with determining the amount and admission that this court would eventually, no matter what, have to allow the claim.

9. It was not the position of this Debtor to brief this issue when it filed the motion seeking an extension because often there is no objection, and a lot of fees can be saved without filing a brief and if the matter needs to be addressed in briefing, it could be so addressed before or at the time of a final hearing. As to the court's decision in *Shamirzadi,* this case and *Chalmers* have nothing in common with that case which had gone on for three years - the court had given the Debtor every chance to pay her creditors and what happened was absolutely nothing, nor had the Debtor liquidated and accounted for her assets. The court found that she, the Debtor, had not been carried her burden on any of the factors set forth in the case *McCann v. Holder*. This is in many ways a case very similar to that found in. *In Re Henry Mayo Newhall Memorial Hospital,* 282 BR 444, that went to the back in the Ninth Circuit 2002 because basically only the Debtor could really propose a plan here; that is pretty much similar to this case the court in this case went on to say that in such a situation and it is a fact specific question that calls for a fact specific exercise of judgment about which seasoned judges may differ, but they found the cause did exist where a Chapter 11 Debtor alone could propose the plan, and where the extension was a first extension in a complicated case which should not have been pending for as long, considering its relative size and complexity and in which the Debtor did not appear to be proceeding in bad

faith, had good operating revenues, even improving revenues, and making satisfactory progress in dealing with its creditors.

10. Mr. Reiss should certainly be familiar with this case because he was involved in it and represented the Unsecured Creditors Committee. Quite frankly, it seemed a case more in his favor because there the hospital was losing money and a substantial amount of money, was just not the case here, but it was a complex case and had not been pending long - they had a dispute to resolve with one particular group of doctors that would improve their ability to operate. They hit a challenge from some particular claims and they were beginning to make some progress and the revenues were beginning to improve or at least maintain. Once again, Mr. Reiss contended there, as he does here, that the hospital was not forthcoming about the intended terms of the plan and he went even further by saying that his creditors wanted to propose a competing plan because of the nonprofit status of the hospital. The hospital argued that in fact committee's efforts would disrupt their own and in fact only they could preserve the nonprofit status and the fundraising status in the hospital.

11. Here, because the Debtor has basically a service business which is so tied to its management's operational skills, that if they simply give up the ship and stop operating the business because this just becomes too difficult to deal with warring creditors, this case will simply be over. New counsel for the committee has not even had a chance to get itself properly constituted, but believes that the Debtor should be conducting negotiations with the committee with whom it cannot even speak with that threat of sanction - this is simply ridiculous.

12. The FLSA statute has retaliation provisions; these members were not even listed as members of the committee directly but through their contested case counsel. The precedent in Henry Mayo Newhall is against this, and begins this objection. In looking at the *Dow Corning*

4

factors, the case from which that case and this, really makes it is clear that the Debtor should have its opportunity; the Debtor has produced a draft plan and disclosure statement as an exhibit in the stay proceeding and is now trying to flush out those exhibits and get its experts in order because no sooner had the stay proceeding ended.

13. Mr. Reiss himself contacted the Debtor's counsel and wants to know what the accountants and the economists are going to back up in those various exhibits so he can attempt to pick them apart. Counsel was in the process of lining them up, and counsel has already filed and noticed proceeding to hire accountants and is considering the employment of a business economist to deal with some of these more difficult forward projections because clearly what seems simple in testimony, i.e., management, becomes to aged or ill to carry on the business and will fold. Having no hard assets is likely to have little or no liquidation value, and should be subject to great contest. Quite frankly, once these claims are filed the Debtor, if necessary, will file claims estimation proceedings as necessary to see that this plan moves along.

14. Right now, the Debtor is guessing at what the Debtor believes will be the amount of filed claims. It seems very strange, though it is perhaps the fault of substantial solicitation by lawyers, that out of 1,100 people that were solicited in the *Ganci* federal court suit, only 70 initially decided to participate in the FLSA suit, 80 or so in the state law claims. The Debtor cannot count on those numbers carrying through the balance of the claimant.

15. In looking at *Dow Corning,* the court says that the burden to carry exclusivity gets heavier with each extension. This is the first extension in the difficult and complicated case that had been mired with litigation over these *Ganci* claimants who are insistent on a stay modification on unsecured claims, which is very unusual in a Chapter 11.

16. The passage of time is not alone reason to terminate exclusivity. The court needs to consider the size and complexity of the case, which for this jurisdiction is a large and complex case. The necessity of sufficient time to permit the Debtor to negotiate a plan and provide adequate information has been absolutely impossible because of the *Ganci* stay litigation. There was no negotiating with the stay litigation going on, as the testimony will show the existence of good-faith progress toward reorganization of these Debtors, and the testimony has shown that all hearings have tried everything they can to try to make sure that claimants are paid. They could have shut the doors down and walked away, but they have not done that.

17. This evidence is in the extreme good-faith toward reorganization, recognizing the fact that these Debtors are carrying on and paying bills as they become due, and counselling with skilled lawyers to try to determine what to do with ongoing wage and hour questions; and whether a viable plan can be filed. There is no doubt that anybody would deny that there is a possibility to do that whether or not the Debtor has been attempting to make progress. It would be hard to deny that, though it is certainly difficult to deny that the Debtor has had a difficult time making any progress with the *Ganci* creditors until the stay issue has been resolved.

18. The time which has elapsed in the case is very little, and whether it is seeking this extension to pressure creditors into giving into the Debtor's demands to reorganize simply is not a factor here and whether there is any unresolved contingency (that is really not the case) the only unresolved contingency that really exists here is how the stay motion really will go when in a way that is not even unresolved in the sense that once the claims are filed, a claims estimation proceeding could be filed regardless under 11 USC Section 502(C), and though the expense and the work multiplies, a plan could be confirmed even if another three (3) years were spent litigating this matter in the Southern District of Ohio.

19. Mr. Reiss has not demonstrated anything about these factors either on behalf of the committee nor has he demonstrated that he has the support of the committee in making this objection.

**WHEREFORE** the Debtor moves this Court for an Order denying this objection and for such other and further relief as the Court be deemed in the premises.

Respectfully submitted,

B.L.F., LLC

By: s/ Jennie D. Behles
Jennie Deden Behles
P.O. Box 7070
Albuquerque, NM 87194-7070
(505) 242-7004, (505) 242-7066 fax

## CERTIFICATE OF SERVICE

I certify that I sent a true and correct copy of the foregoing to the parties listed below on December 13th, 2018 through the Court's electronic noticing system, the CM/ECF SYSTEM.

Leonard Martinez-Metzgar
United States Trustee
P.O. Box 608
Albuquerque, NM 87103
Email: leonard.martinez-metzgarusdoj.gov

Daniel Harris Reiss
Levene Neale. et al LLP
10250 Constellation Blvd #1700
Los Angeles, CA 90067
Phone Number: (310) 229-1234
Fax Number: (310) 229-1244
Email: dhr@lnbyb.com

Matthew C. Helland
NICHOLS KASTER, PLLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: 415-277-7235
Facsimile: 415-277-7238
Email: helland@nka.com

Louis Puccini Jr.
Robert D. Gorman P.A.
P.O. Box 25164
Albuquerque, NM 87125-0164
Email: louis@rdgormanlaw.com


By:   *s/ filed electronically*
      Jennie Deden Behles