UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MBF INSPECTION SERVICES, INC.          Case No. 18-11579-11

　　　　Debtor(s).

**OPPOSITION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO STIPULATED ORDER APPROVING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION**

The Official Committee of Unsecured Creditors (the "Committee") hereby files its opposition to the "Stipulated Order Approving Use of Cash Collateral and Providing Adequate Protection" entered by the Court on January 4, 2019 (Dkt. No. 157) (the "Cash Collateral Order") as follows:

　　A.　**Background**.

　　　　1.　**Previous Cash Collateral and Financing Motions.**

With respect to cash collateral and post-petition financing, the Debtor has previously filed the following motions:

　　1.　*Debtor's Emergency First Motion for Use of Cash Collateral*, Dkt. No. 4, filed June 22, 2018;

　　2.　*Debtor's First Amended Emergency First Motion for Use of Cash Collateral*, Dkt. No. 7, filed June 22, 2018;

　　3.　*Debtor's Second Emergency First Motion for Use of Cash Collateral*, Dkt. No. 17, filed June 28, 2018;

4. *Joint Stipulated Motion for Credit and/or Additional Use of Cash Collateral Order on Emergency Basis under 11 U.S.C. § 364(c)* (the "DIP Financing Motion"), Dkt. No. 31, filed July 20, 2018, which was heard on September 4, 2018. The Court entered an order granting the DIP Financing Motion on September 13, 2018 (the "DIP Financing Order"). *See* Dkt. No. 68.

**2. All prior cash collateral and financing motions pre-date Committee formation.**

The aforementioned cash collateral and financing motions all pre-dated the formation of the Committee. The Committee was formed on or about September 5, 2018. *See* Dkt. No. 61. Despite this appointment by the United States Trustee, the Debtor filed a motion on September 17, 2018, challenging the appointment of the Committee and its composition. *See* Dkt. No. 71(the "Committee Composition Motion"). This Court entered an order overruling the Debtor's Committee Composition Motion on November 21, 2018 to the extent that no members of the Committee were removed. *See* Dkt. No. 129. Counsel for the Committee was approved by this Court's order entered November 30, 2018, over the objection of the Debtor. *See* Dkt. No. 140.

Because all of the foregoing pleadings and opportunities to respond pre-dated the existence of the Committee, the Committee has not yet had the opportunity to raise certain material issues with respect to the conditions imposed on the Debtor and the estate with respect to the use of cash collateral as well as post-petition financing, and the prejudice that may be suffered by general unsecured creditors as a result.

**B. The Debtor Should Not Be Able to Use Its Cash Collateral to Pay Down Leasing's Pre-Petition Credit Line, and then Borrow Additional Funds on a Super-Priority Basis.**

The Cash Collateral Order provides that the Debtor can borrow as it wishes under the terms of the DIP Financing Order, and also allows the Debtor to "use all funds it receives to make payments in accordance with the Budget and this Order, and to reduce the **balance on**

2

Case 18-11579-t11    Doc 164    Filed 01/18/19    Entered 01/18/19 12:21:03 Page 2 of 7

***Debtor line of credit*** with Inspection Leasing, Inc. Debtor may draw upon that line of credit in accordance with its ordinary course of business, consistent with past practice. Debtor may pay on the line of credit in accordance with existing loan terms and the order of the Court." *See* Cash Collateral Order, pg. 6, ¶ 8 (emphasis in original).

This provision is problematic because it allows the Debtor to unfairly convert all of its pre-petition debt – secured only by pre-petition collateral – into post-petition debt with broad super-priority administrative claims. The Committee objects to the Debtor's unfettered ability to pay down the Leasing credit line, and then later borrow up to $5 million under the DIP Financing Order.[1]

> The DIP Financing Order states:
>
> "The Lender has a super priority administrative expense pursuant to 11 USC § 364(c)(1) for all loans and Lender has priority over any other administrative expenses provided by 11 USC § 503(b) and § 507(b)."

*See* pg. 2, ¶4.

The proposed terms in the Cash Collateral Order creates an opportunity to abuse the post-petition lending process because it gives Leasing a superior claim to that of any other creditor with respect to the Debtor's assets with a value in excess of that securing its lien claim. A lender should not use post-petition financing to exert excessive control over the chapter 11 process and value in the case to the severe disadvantage to all other creditors and parties in interest. See, e.g., In re Ames Dept. Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (financing should not be approved if the purpose is to "pervert the reorganization process from one designed to accommodate all classes of creditors and equity interests to one specifically crafted for the benefit of the Bank and the Debtor's principals who guaranteed its debt.").

Based on the Debtor's monthly operating reports, the Debtor paid $1,833,061.69 to Leasing against the line of Credit since the filing of this case. *See* September 2018 Monthly

---

[1] DIP Financing Order, pg. 2, ¶ 1.

Operating Report, Dkt. No. 96, pg. 6.  However, as set forth on the Budget referred to in the Cash Collateral Order filed on January 11, 2019 (Dkt. No. 161, pg. 4), the Debtor intends to borrow $500,000 from Leasing in March 2019.  This post-petition borrowing is granted super-priority under the DIP Financing Order, whereas the pre-petition debt to Leasing does not have this priority.

Therefore, the Cash Collateral Order should be modified to only allow a super-priority claim – if any – for (1) post-petition borrowings from Leasing that exceed the amounts paid by the Debtor reducing the pre-petition loan balance to Leasing since the Petition Date; and (2) subject to the limitations of 11 U.S.C. § 507(b), discussed below.

### C. Leasing's super-priority claim should be subject to the limitations set forth in 11 U.S.C. § 507(b).

Section 507(b) is designed to provide administrative claim status to an entity only when adequate protection under Section 361(2) is insufficient to protect a lienholder's interests.  Under the DIP Financing Order, Leasing is granted a super-priority claim without regard to whether its claim would receive that treatment under §§ 361(2) and 507(b). See, e.g., In re Blehm Land & Cattle Co., 859 F.2d 137, 140-41 (10th Cir. 1988)("any adequate protection provided must not substantially exceed that to which the secured creditors is entitled"); In re Becker, 51 B.R. 975, 980 (Bankr. D. Minn. 1985)("The Court is aware of no authority, legal or equitable, that would allow a debtor-in-possession and creditor to agree among themselves to accord the creditor, at the expense of other interests in the case, more than what § 507(b) provides for").

As stated above, the DIP Financing Order granted Leasing a super-priority claim in the amounts borrowed post-petition by the Debtor.  DIP Financing Order, pg. 2, ¶4.  Given these terms, if the Debtor pays down its pre-petition credit line with Leasing and then borrows money from Leasing under the DIP Financing Order, it is creating a super-priority claim in favor of Leasing which envelopes the totality of the estate's unencumbered assets.   Therefore, the super-priority claim of Leasing – whether such is purported to arise from pre-petition or post-petition

borrowing - should be limited only to the extent needed to adequately protect the lender against any diminution in the value of its collateral due to the use of cash collateral.

Further, the scope of Leasing's super-priority claim should be limited in the best interests of general unsecured creditors. Of particular concern are those assets that were not subject to Leasing's pre-petition secured interest, including any chapter 5 avoidance actions that may exist. It has been widely recognized that avoidance action recoveries should be preserved for the benefit of general unsecured creditors. <u>See</u>, <u>e.g.</u>, <u>In re Cybergenics, Corp.</u>, 226 F. 3d 237, 244 (3rd 2000)(avoidance actions are not property of the debtor but rather are created by operation of bankruptcy law).

Given the other adequate protections for Leasing's liens, there is no compelling reason to grant a super-priority administrative claim that encumbers avoidance actions created by the filing of this bankruptcy case. Therefore, the Cash Collateral Order should be modified to expressly except and preserve the proceeds of any bankruptcy avoidance actions, as well as tort actions, from any encumbrances or reach of any super-priority administrative claim.

D. **<u>The Scope of the Replacement Liens Granted in the Cash Collateral Order is Overly Broad</u>.**

Under Section 361, a debtor may grant a replacement lien solely "to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interests in such property." 11 U.S.C. § 361(2). So, for example, if market forces completely unconnected to the Debtor's use of cash collateral causes a diminishment in Leasing's collateral, this should not give rise to a replacement lien in any post-petition assets of the Debtor not encumbered as of the Petition Date. The Cash Collateral Order states that the "amount of the diminution in value" of the lienholders' collateral. The Committee requests that the Cash Collateral Order be modified so that any replacement lien is limited to the diminution in value of collateral that is directly related to the use of cash collateral as provided in 11 U.S.C. § 361(2).

E. **The Debtor must Provide Evidence that Lienholders are Oversecured Prior to Paying Interest.**

Section 506(b) provides for the allowance of a claim for interest (and other fees, costs and charges enumerated therein) on a secured claim only if the pre-petition secured claim is oversecured. The Debtor has not presented any evidence with respect to the value of the collateral securing its lenders' pre-petition liens; therefore, there is no basis to add post-petition interest to these pre-petition claims. The Cash Collateral Order goes even further in that it provides that both Leasing and Valley Bank shall be *paid* interest when it is due. *See* Cash Collateral Order, pg. 2, ¶¶ 6.j.i. and iii. Further, as stated above, the Debtor intends to borrow additional funds from Leasing during the period covered by the Cash Collateral Order. The Debtor should not be borrowing money to finance the payment of interest to Leasing or Valley Bank. Therefore, the Cash Collateral Order should be modified to disallow payment of post-petition interest absent evidence that (1) Leasing and Valley Bank are both oversecured; and (2) that the Debtor has sufficient positive cash flows so that it need not borrow additional funds to pay all of its post-petition operating expenses as they accrue before seeking authority to pay interest to its lienholders.

F. **Conclusion.**

For the foregoing reasons, the Committee requests that the Cash Collateral Order be modified consistent with the above objections, and that the Court order such other and further relief as appropriate.

Dated: January 18, 2019

LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.

By: /s/ Daniel H. Reiss
Daniel H. Reiss
Counsel for the Official Committee of
Unsecured Creditors

6

Case 18-11579-t11    Doc 164    Filed 01/18/19    Entered 01/18/19 12:21:03 Page 6 of 7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was filed electronically on January 18, 2019 pursuant to the service requirements of the ECF/CM for the United States Bankruptcy Court for the District of New Mexico, which will notify all counsel of record.

                                                    s/ Daniel H. Reiss
                                                    Daniel H. Reiss

7

Case 18-11579-t11    Doc 164    Filed 01/18/19    Entered 01/18/19 12:21:03 Page 7 of 7