# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEW MEXICO

In re:

MBF INSPECTION SERVICES, INC.        Case No. 18-11579-11

    Debtor(s).

### REPLY TO OBJECTION BY INSPECTION LEASING, INC. TO MOTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY COHNREZNICK, LLP AS FINANCIAL ADVISORS AND COHNREZNICK CAPITAL MARKET SECURITIES, LLC AS INVESTMENT BANKER

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 bankruptcy case filed by MBF Inspection Services, Inc. (the "Debtor") hereby replies to the opposition by Inspection Leasing, Inc. ("Leasing") [Dkt. No. 218] (the "Objection") to the Committee's application to employ (the "Employment Application") CohnReznick LLP as its financial advisors and CohnReznick Capital Market Securities, LLC as its investment banker (collectively, "CohnReznick"), pursuant to 11 U.S.C. §§ 327(a), 330 and 1103(a) [Dkt. No. 186], as follows:

## I.

## THE OBJECTION SHOULD BE OVERRULED.

In its Objection, Leasing argues that the Employment Application should be denied for three reasons: (1) the Committee does not need to employ CohnReznick because (i) the Debtor has financial professionals that are providing accurate financial reporting and (ii) the purported "plan" is to pay unsecured creditors 100%; (2) CohnReznick's hourly billing rates are too high; and (3) Committee members could have employed their own financial advisors, but did not. The Committee submits that these objections are not meritorious and should be overruled.

**A.     The Debtor's employment of financial professionals is not grounds for denial of the Employment Application.**

The Committee does not dispute that the Debtor should and has the right to employ competent financial professionals to assist the Debtor to properly administer this chapter 11 case. However, the Debtor's employment of financial professionals does not impinge on nor limit the Committee's right and obligation to employ the financial professionals it deems necessary to discharge its fiduciary duties to general unsecured creditors. If a committee was expected to rely on a debtor's financial professionals, then it would be the rare circumstance that a creditors committee would be able to employ its own financial advisors.

Because the interests of creditors and a bankrupt debtor are in constant conflict over the course of a chapter 11 proceeding, it is common practice for an unsecured creditors committee to retain its own financial advisors. Indeed, when both a creditors committee and an equity committee is appointed, courts have recognized that these divergent interests are grounds for each committee to retain their own financial advisors.

The bankruptcy court in *In re Saxon Industries, Inc.,* 29 B.R. 320 (Bankr.S.D.N.Y.1983) recognized an inherent conflict between creditors and equity holders. There, the bankruptcy court granted the application of an equity committee to employ its own accountants despite the prior employment of accountant by the creditors' committee.

The question posed to the court in *Saxon* is precisely the same as Leasing presents here with respect to the need of a financial advisor in light of financial information that has been and can be generated by other professionals employed in the case. The *Saxon* court addressed an employment application by an equity committee to engage a financial advisor, Arthur Anderson & Co. The creditors committee in that case objected, arguing that the equity committee could rely on financial information provided by the creditors committee's financial advisor. *Id*. at 321. The *Saxon* Court stated the issue presented as: "whether the availability of information from various accounting firms presently employed by other entities in the case obviates the need for the

2

Equity Committee to employ its own professional financial advisors." *Id.* Due to the inherent difference in the duties owed by each committee to its constituents, the *Saxon* Court noted that:

> "In the instant case, the two committees are separate and distinct entities with the members of the unsecured creditors and equity creditors class possessing variant priorities and interests with respect to their relationship with the debtor. Thus, an accountant retained by the Creditors' Committee cannot also represent the interests of the Equity Committee."

*Id.*

The *Saxon* court further ruled concluded that:
Independent and disinterested advice is required for the Equity Committee to meet its fiduciary responsibilities and for the Committee's professionals to meet their fiduciary responsibilities."

*Id.* at 322.

Citing *Saxon*, the District Court in *In re Evans Products Company*, 58 B.R. 572 (D. S.D. Fla. 1985) similarly reversed the bankruptcy court's denial of an equity committee's application to employ financial advisors. The Court in *Evans* stated: "Stockholders are no less entitled than creditors to independent, zealous representation by professionals free of any compromising influences or loyalties." *Id.* at 576.

Here, the need for independent financial advice for the Committee is at least as important as in *Saxon* when it comes to the inherent conflict of interest that exists among the Debtor and its unsecured creditors. Further, as set forth in the Employment Application, CohnReznick's expertise is beyond question, and its services go well beyond just "crunching the numbers." CohnReznick's deep experience in chapter 11 cases enables the firm to give essential, concise and user-friendly information to the Committee whose members are unfamiliar with the type of information necessary to make educated decisions on behalf of all general unsecured creditors.

Although the Committee's members are, in a way, homogenous, this does not make their goal to maximize the recovery on their claims – and to obtain the most favorable treatment in a

3

plan regarding the timing and certainty of payment - any different than creditors on a committee with a more varied composition. Additionally, the Committee members' interests are no different the dozens (or hundreds) of other unsecured creditors who are entitled to representation by a Committee that is well-equipped to perform their fiduciary function with independent and unbiased counsel from its professionals. Therefore, employment of CohnReznick is essential to the Committee's ability to act as a fiduciary to unsecured creditors independent of the Debtor.

      **B.     The chapter 11 plan that was filed by the Debtor, and its statements that it will pay creditors in full, are not a basis to deny the Employment Application.**

At the status conference held before this Court on April 3, 2019, new counsel for the Debtor represented that the plan and disclosure statement filed by prior counsel would be withdrawn. Further, although the Debtor has maintained that unsecured creditors would be paid in full in this case, this is not a basis for denying the Employment Application.

Although the Debtor may propose a full payment plan, the Committee must examine and determine:

      1.     The feasibility of such a plan pursuant to 11 U.S.C. § 1129(a)(11);

      2.     Whether the plan is in the "best interests" of creditors under 11 U.S.C. § 1129(a)(7), which would include a valuation of the Debtor's enterprise;

      3.     Risk factors relating to a plan that provides for payments to creditors over a number of years;

      4.     The existence of plan options that may provide for more certain and more expeditious payment to unsecured creditors;

      5.     The need for post-confirmation oversight with respect to plan compliance;

      6.     The existence of sources to pay creditors outside of the business operations of the Debtor, whether through litigation or negotiation; and

      7.     Other plan issues that are not addressed simply by the Debtor proposing a purported 100% plan.

In addition to assisting the Committee with the foregoing irrespective of whether the Debtor contends that creditors will get paid 100%, the Committee has the continuing obligations to carry out their other fiduciary duties as an unbiased "watchdog" in this chapter 11 case, and advising the Committee as appropriate. Therefore, it is appropriate to grant the Employment Application despite the Debtor's allegation that it will propose a 100% plan.

**C.  CohnReznick's hourly billing rates are not a basis for denial of the Employment Application.**

This Court has employed several professionals at the expense of the Debtor's estate without ruling on the specifics of such professionals' hourly rates. Rather, the Court has retained its discretion under 11 U.S.C. § 328 with respect to professional fees and hourly rates. *See*, *e.g.*, *Order Granting Debtor's Motion to Employ Attorneys*, Docket No. 230 entered April 24, 2019, pg. 2; *Order Granting Motion to Employ Levene, Neale, Bender, Yoo & Brill L.L.P.*, Docket No. 140 entered November 30, 2018, pg. 2, ¶ 4.

Further, although administrative expenses is always of concern, the fact that a Committee professional will add to the administrative expenses to be paid in this case is not a basis to deny the Employment Application. *See, In re Standard Steel Sections, Inc.,* 200 B.R. 511, 513 n. 2 (S.D.N.Y.1996) ("The court may not deny appointment simply because of its belief that such appointment may prove to be a drain on the assets of the estate."). For these reasons, Leasing's objection based on CohnReznick's hourly rates should be overruled.

**D.  A Creditors Committee's purpose is to be able to represent the interests of unsecured creditors without the need for such creditors to incur costs to employ professionals in chapter 11 cases.**

It is absurd to suggest that the Committee members should retain their own professionals to represent the interests of dozens (or possible hundreds) of other unsecured creditors out of their own pocket. The Committee is the proper vehicle through which general unsecured creditors may advocate for the rights of its constituents. To the extent that the vast majority of general unsecured creditors in this case are former employees of the Debtor, it would be improper and

5

Case 18-11579-t11    Doc 237    Filed 05/02/19    Entered 05/02/19 18:05:15 Page 5 of 7

unfair for the Debtor or this Court to expect that individual creditors will employ their own professionals to defend their claims against a corporation with the resources of the Debtor.

## II.

## CONCLUSION

For the foregoing reasons, and those set forth in the Employment Application, the Employment Application should be granted and Leasing's Objection should be denied.

Dated: May 2, 2019

Respectfully submitted,
LEVENE, NEALE, BENDER, YOO
    & BRILL L.L.P.

By: /s/ Daniel H. Reiss

Daniel H. Reiss
Counsel for the Official Committee of
Unsecured Creditors

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above was filed electronically on May 2, 2019 pursuant to the service requirements of the ECF/CM for the United States Bankruptcy Court for the District of New Mexico, which will notify all counsel of record.

                                                    s/ Daniel H. Reiss
                                                    Daniel H. Reiss